924 F.2d 1052
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Steve JENKINS, Plaintiff-Appellant,
v.
VIRGINIA INTERNATIONAL TERMINALS, INC., in personam,
Defendant-Appellee.
 No. 90-2420.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 8, 1991.
Decided Feb. 11, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. John A. MacKenzie, Senior District Judge. (CA-89-812-N)
 Richard Ivan Gulick, Norfolk Va., argued for appellant.
 Carter Tredway Gunn, Vandeventer, Black, Meredith & Martin, Norfolk, Va., argued for appellee; Thomas J. Duff, Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, SPROUSE and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Steve Jenkins brought this action against Virginia International Terminals (VIT), a seaport terminal operator, contending that VIT employees damaged antiques he had shipped from England and which were unloaded by VIT in Norfolk, Virginia. In a bench trial on the issue of negligence, the district court found in favor of VIT, and entered judgment for it on Jenkins' complaint and on VIT's counterclaim for expenses incurred in unpacking and repacking the goods. We affirm. As a consequence of our affirmance of the trial court's conclusion on the issue of negligence, it is not necessary to consider the contended error of its pre-trial holding that the Himalaya Clause* of the bill of lading limited any liability on the part of VIT to $500 damages.
 
 
 2
 Jenkins, an Indiana antique trader, with the help of several individuals, packed a 20-foot container of bric-a-brac in Chesterfield, England, which was trucked and loaded for sail from Felixstowe, England, to Norfolk, Virginia, in November 1988. A through bill of lading was issued on behalf of M/V EVER GREET. On December 2, 1988, the container was discharged from the ship at Norfolk International Terminals, owned and operated by VIT, where a United States Customs Service search was undertaken. The contents were completely removed from the container by VIT employees during this search and later placed back in the container. On December 6, 1988, the container was trucked from VIT to Indianapolis, Indiana, and again inspected by the U.S. Customs Service two days later. After clearance, the container was trucked to Westfield, Indiana, where Jenkins and others unloaded it.
 
 
 3
 At trial, U.S. Customs Agent Judith Paulson testified that while most of the contents had already been removed from the container when she observed them during the Norfolk Customs inspection, the items remaining in the container were not well wrapped or well packed. According to Paulson most of the items were sparsely wrapped and the drawers were stuffed with unwrapped objects which appeared breakable. She also testified that some of the furniture had scratches and/or minor damage, and that she was "appalled at the way [the shipment] looked" because the type of packaging was not even minimally adequate.
 
 
 4
 According to L.M. Hitchens, a VIT checker who also examined the container, the bric-a-brac was packed tightly and the stowage lacked organization such that it was "fit in like a jigsaw puzzle." Hitchens further explained that he did not note damage to the contents of the container on the checker's tally because bric-a-brac commonly has "scratches and dings and dents and cracks here and there."
 
 
 5
 VIT foreman John Degaraff related that when the container was opened the "old and scarred" furniture appeared to be stacked one on top of another and that VIT employees were afraid to open both doors of the container for fear the freight would fall out. Finally, longshoreman Jeffrey Summerell opined that the stowage "looked like somebody stood the container on end and dumped it in with a dump truck." He further said that while a few pieces had minimal wrapping, the majority of the material was on the floor.
 
 
 6
 Accepting the testimony that the original packing was substandard and grossly inadequate when it was opened for the customs inspection, the district court found in favor of VIT on both the negligence charge and its counterclaim. On appeal, Jenkins contends the district court's reference to a "coterie" of Jenkins' friends as having packed the container for shipment, thus ignoring the aid given by individuals experienced in antique handling, suggests the trial judge's predisposition to conclude that the container was not well packed in England. Further, he says, the court's attention to the absence of information on the ship's handling and voyage conditions was error because VIT's own documentation indicated no damage when the container was unloaded. Jenkins also urges that no inference could properly be drawn from his settlement with the carrier. He also advances several arguments addressed to the weight of the evidence, to the trial court's findings, to his objections to leading questions, and to the lack of specificity in the trial court's findings.
 
 
 7
 We, of course, review the district court's factual finding of negligence under the clearly erroneous standard. Bonds v. Mortensen & Lange, 717 F.2d 123, 125 (4th Cir.1983). Here, there was conflicting evidence both as to the condition of the goods when they arrived in the Norfolk terminal and as to who was responsible for the goods being in that condition. The trial court heard the testimony, weighed the credibility of the evidence, and made its factual determination. In our view, the trial court was not clearly erroneous in its findings of fact nor did it commit reversible error in its trial rulings or in articulating its findings.
 
 
 8
 The judgment of the district court is therefore affirmed.
 
 AFFIRMED
 
 
 *
 A Himalaya Clause is a provision frequently employed in the shipping industry which extends liability limitations to third parties. It derives its name from Adler v. Dickson (the Himalaya), 1 Q.B. 158 (1955), a personal injury case in the which vessel owner argued that the defense appearing on the injured passenger's ticket should be extended to its servants